UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE
MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

September 4, 2009

Paul R. Schlitz, Jr., Esquire
Jenkins Block & Associates, PC
The Symphony Center
1040 Park Avenue, Suite 206
Baltimore, Maryland   21201

Allen F. Loucks, AUSA
Office of the United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland   21201

Subject: *Mary Brecheen v. Michael Astrue, Commissioner of SSA*
Civil No. JKB-08-998

Dear Counsel:

On April 25, 2008, the Plaintiff, Mary Brecheen, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income ("SSI"). (Paper No. 1.) I have considered the parties' cross-motions for summary judgment. (Paper Nos. 17 & 28.) I find that no hearing is necessary, and Plaintiff's request for the same (Paper No. 17 at 2) is DENIED. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3). *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I am affirming the agency's decision, and I am writing this letter to explain my rationale.

Ms. Brecheen's original SSI application was based upon her claim of disability due to back pain and obesity and was filed on August 13, 2003; she alleged that she became disabled on August 12, 2003. (Tr. 53, 58, 67-68.) She also indicated she took antidepressant medication. (Tr. 63.) Her claim was denied initially and upon reconsideration. (Tr. 20-32.) After receiving testimony at an administrative hearing and reviewing the medical evidence, the Administrative Law Judge ("ALJ") found that Plaintiff has severe impairments of obesity, chronic lumbar strain, peripheral neuropathy, and asthma but determined that none of Ms. Brecheen's impairments satisfied the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("LOI"). (Tr. 14.) The ALJ further determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work but found additional limitations on prolonged standing and walking and extended concentration. (Tr. 16.) Consequently, Plaintiff is not able to perform any of her past relevant work. (Tr. 17.) However, taking into consideration her age, education, work experience, and RFC, the ALJ concluded that jobs that Plaintiff can perform exist in significant numbers in the national economy and that, therefore, she is not disabled. (Tr. 17-18.) The Appeals Council denied review. (Tr. 4-6.) Afterward, Ms. Brecheen filed suit for judicial review. *Brecheen v. Astrue, Comm'r of Social Security*, PWG-05-2453 (D. Md. 2007).

Letter to Counsel – *Brecheen v SSA*
Page 2
September 4, 2009

The Court in that earlier proceeding granted Plaintiff's alternative motion for remand, concluding that the ALJ had failed properly to evaluate whether Ms. Brecheen had a severe mental impairment. *Id.*, Paper No. 34 (Tr. 303). Prior to remand, Plaintiff submitted a second application for SSI benefits, claiming disability due to back problems, diabetes, and breathing problems due to obesity. (Supp. Tr. 538-44, 558.) This, too, was denied initially and upon reconsideration. (Supp. Tr. 524-30.) Upon remand, a different ALJ addressed both the original and second applications, conducted another hearing, and evaluated the evidence. (Tr. 279-92.) She concluded that Ms. Brecheen has severe impairments of degenerative disc disease, peripheral neuropathy, asthma, obesity, depression, and post traumatic stress disorder and that they do not satisfy the LOI. (Tr. 281-85.) She found that Ms. Brecheen has the residual functional capacity ("RFC") to perform sedentary work "further limited by her mental impairments to simple, routine work with only occasional contact with co-workers or the general public, work that is essentially isolated with only occasional supervision, low stress work defined as only occasional changes in the work setting, and work dealing with objects rather than people." (Tr. 285.) The ALJ found that Ms. Brecheen was not able to perform her past relevant work as a delicatessen worker. (Tr. 290.) Because Ms. Brecheen is not able to perform the full range of sedentary work, the ALJ called upon a vocational expert ("VE") to determine whether jobs consistent with her abilities existed; the VE testified that Plaintiff could perform the jobs of packer, grader/sorter, and surveillance system monitor and that those jobs are available in significant numbers in the national economy. (Tr. 291.) Accordingly, the ALJ ruled that Ms. Brecheen is not disabled. (*Id.*) She did not file a request for the Appeals Council to review the ALJ's decision; therefore, it is the final, reviewable decision of the agency.

In the current case, Plaintiff again asks this Court to grant summary judgment in her favor or to remand for further proceedings. (Paper No. 17.) She makes two arguments:

I. that the Commissioner cannot adjudicate a claim without displaying its contents to counsel; and
II. that the ALJ erroneously assessed her mental RFC because the ALJ's finding of mild limitations in Plaintiff's activities of daily living is unsupported.

(Paper No. 17 at 4-5.)

Issue I: Display of Plaintiff's Claim to Counsel

Ms. Brecheen argues that her counsel was not shown her second application for SSI benefits at the time of the second evidentiary hearing and that this violated her right to due process. (*Id.*) A sub-issue in this first argument is that the record before the Court fails to include either the second SSI application or medical evidence to which the ALJ refers in her decision. (Paper No. 17 at 2-4.) Taking the latter point first, the undersigned observed, in correspondence to both parties, that the filing of a supplemental transcript by Defendant after the filing of Plaintiff's motion for summary judgment could affect resolution of this issue; accordingly, I noted that it would be helpful to the Court for Plaintiff to file a response to Defendant's motion for summary judgment. (Paper No. 29.) Plaintiff filed nothing in response,

which suggests concession of this sub-argument. Having reviewed the supplemental transcript, I find nothing relevant to this case has been omitted from it.

Ms. Brecheen's primary argument in Issue I is unpersuasive because it is supported by neither the law nor the facts. The only authority cited for this argument is *Richardson v. Perales*, 402 U.S. 389 (1971), which held that examining physicians' reports may be received as evidence in a Social Security disability claim hearing and may serve as substantial evidence for the Commissioner's decision even though they may be contradicted by live testimony from the claimant and other medical sources. *Id.* at 402. It did not deal with the timing of when a claimant's attorney views the benefits application submitted by the claimant to the Social Security Administration. Plaintiff's argument suggests that her own application should be viewed as evidence that she has been unable to "confront" and rebut (Paper No. 17 at 4), an illogical argument since she was the source of the information in her application.

Her argument also lacks factual support. The second evidentiary hearing was conducted on October 12, 2007, by videoconferencing, with the ALJ in Dover, Delaware, and Plaintiff and her counsel in Cambridge, Maryland. (Tr. 450.) Ms. Brecheen's second application was submitted two years before that in September 2005. The ALJ, at the beginning of the hearing, combined the second application with the application subject to the remand order. (Tr. 451.) She noted, however, that even though the two files were supposed to have been combined by a technical assistant before the hearing, the medical reports and the second application were not presently before her. (Tr. 451-53.) When the issue arose at the hearing, Plaintiff's counsel, who is also her attorney in the instant proceeding, proposed proceeding with the hearing and later looking at the records when they were located. (Tr. 453.) At the end of the hearing, the ALJ said that she must have seen the application because it was reflected in her notes. (Tr. 490.) Ms. Brecheen's attorney said that when the additional material was located, he would send a copyist over to make copies of the material "[b]ecause we're sending people over there to copy it [sic] all the time and I'll just take a look at it and I'll make some comments on it." (*Id.*) As Defendant has noted in his motion's supporting memorandum, Ms. Brecheen's attorney wrote the ALJ twice, on December 17, 2007, and January 17, 2008, to request that a decision be rendered "as soon as possible" because his "file indicates that the record in the above captioned matter has been complete since 10/12/2007" (Tr. 293-94), the latter date, the Court notes, being the same as the date of the hearing. Regardless, counsel now claims that he "has never seen the records from the September 14, 2005 application." (Paper No. 17 at 3.)

Ms. Brecheen, through her counsel, invited the alleged error about which she now complains. Thus, not only did Ms. Brecheen's attorney accede in the course of action taken by the ALJ, but he also *suggested* it. Further, he was clearly aware for two months ahead of the ALJ's written decision that the file was complete and never complained that he was unable to have copies made of the materials added to the file after the evidentiary hearing. The argument that Ms. Brecheen was denied procedural due process because he did not see the second application at the time of the second hearing has no merit.

Issue II:  RFC Assessment

Plaintiff also faults the ALJ's decision because she claims the ALJ did not make a proper mental residual functional capacity assessment ("mRFC"). (Paper No. 17 at 5.) Specifically, she claims that the ALJ "arbitrarily and selectively evaluated" the treating physician's mRFC, that the ALJ's finding that Ms. Brecheen's depression only resulted in mild restrictions on activities of daily living is unsupported, and that the ALJ's hypothetical question to the vocational expert ("VE") has no evidentiary foundation. (*Id.* at 5-6.)

Under governing regulations, the Defendant will give controlling weight to the medical opinion of a treating source if the opinion on the nature and severity of a claimant's impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2).  If a treating physician's opinion is not given controlling weight, then the ALJ will set forth in her determination the reason for the weight given the opinion, considering the factors included in Section 416.927(d)(2)(i, ii) through (d)(6). The ALJ did not give controlling weight to the opinion of the physician, George Rever, M.D., because the ALJ found it was not supported by sufficient evidence. (Tr. 289.) She did give some weight to a portion of it that was consistent with other medical opinion evidence. (Tr. 290.)

Dr. Rever, the Medical Director of the Caroline County Mental Health Services in Denton, Maryland, performed a psychiatric evaluation of Plaintiff on July 18, 2006, prior to bariatric surgery, which Ms. Brecheen elected not to undergo; she did, however, want to continue mental health treatment at the clinic. (Supp. Tr. 663.) He noted that she had never sought nor received mental health services. (*Id.*) He described her in the following manner:

> Her activity level in the office was a bit above average. She was alert, cooperative, fully oriented and appeared to be of average intelligence. . . . Her thoughts were clear, coherent, logical and goal directed. She showed a full range of affect and her mood was euthymic.  She made good eye contact, related appropriately, showed no bizarre behaviors, denied hallucinations, gave no evidence of delusions, thought disorder or psychosis. She denied suicidal or violent ideation. Her judgment and insight were fair.

(Supp. Tr. 665.) Dr. Rever specifically noted:

> She said she has had postpartum depressions after the birth of each child when she is tired all the time and has trouble falling asleep even though she wants to sleep all the time. . . .
>
> Despite the depression she often has a day or days with high energy and good spirits when her mind races and she will be up at all hours cleaning the house.

(Supp. Tr. 663.) He recommended that she should continue psychotherapy and thought she would benefit from medication for anxiety, depression, and attention deficit hyperactivity disorder, but noted she was reluctant to consider medication. (Supp. Tr. 666.)

On August 31, 2006, Dr. Rever filled out an mRFC form, although not completely because several blanks were left blank and several others only had question marks in them. (Supp. Tr. 659-61.) The form indicates that Ms. Brecheen's abilities to deal with the public, to deal with work stressors, and to maintain attention and concentration were "poor to none." (*Id.*) Dr. Rever also rated her ability to use judgment as "fair." (*Id.*) The basis for those ratings was stated:

> She has panic attacks with agoraphobia, finds it very difficult to leave the house. With recurring depressions she has no energy and finds it difficult to get out of bed. She has a pattern of severe interpersonal . . . rejection sensitivity.

(Supp. Tr. 660.) Additionally, Dr. Rever rated as "poor to none" her ability to behave in an emotionally stable manner, to relate predictably in social situations, and to demonstrate reliability. (*Id.*) He further indicated Plaintiff had "fair" ability to maintain her personal appearance. (*Id.*)

The record does not indicate any mental health clinic visits between Dr. Rever's psychiatric evaluation on July 18, 2006, and April 19, 2007, when she returned to ask for treatment. (Tr. 337.) Ms. Brecheen said then that she was receptive to medication. (*Id.*) She said that her mood continued to go up and down. (*Id.*) Dr. Rever noted that Ms. Brecheen's presentation was essentially the same as on July 18, 2006, and that her diagnoses were unchanged; he prescribed medication for her and planned to see her a month later. (*Id.*)

On May 8, 2007, Plaintiff told Dr. Rever that she was pleased with her response to the medication Abilify, that her mood was more stable, and that she was not so easily angered. (Supp. Tr. 667.) However, the panic and anxiety had continued and that she was having several panic attacks a day. (*Id.*) He added Citalopram to her medications and planned to see her a month later. (*Id.*) A few days later, a clinic worker saw Ms. Brecheen who indicated that the medication was helping to decrease her panic and that she had been able to do some things that she had previously not been able to do. (*Id.*)[1]

On June 8, 2007, Plaintiff told Dr. Rever that she had stopped taking the Citalopram because it altered her depth perception and made her nervous and "activated." (Supp. Tr. 668.) He prescribed fluoxetine and continued her Abilify prescription. (Supp. Tr. 668, 672.) On that same date, Dr. Rever completed another mRFC. (Tr. 333-35.) He described her abilities to follow work rules, to interact with supervisors, and to function independently as "good." (Tr. 333.) He indicated that her abilities to deal with the public and to use judgment were "fair." (*Id.*) He rated her abilities to relate to co-workers, to deal with work stressors, and to maintain

---

[1] The handwritten notes are difficult to read, at best.

attention/concentration as "poor to none." (*Id.*) Dr. Rever further indicated that Ms. Brecheen's abilities to understand, remember, and carry out complex job instructions or to understand, remember, and carry out detailed, but not complex, job instructions were "poor to none." (Tr. 334.) He rated her ability to understand, remember, and carry out simple job instructions as "fair." (*Id.*) He noted that she had a "good" ability to demonstrate reliability and a "fair" ability to maintain her personal appearance, but her abilities to behave in an emotionally stable manner and to relate predictably in social situations were "poor to none." (*Id.*) Notably, the form invited Dr. Rever to "[i]dentify the particular medical or clinical findings *(i.e. mental status examination, behavior, intelligence test results, symptoms)* which support your assessment of any limitations" (Tr. 333, ¶2) and cautioned, "IT IS IMPORTANT THAT YOU RELATE PARTICULAR MEDICAL FINDINGS TO ANY ASSESSED LIMITATION IN CAPACITY[;] THE USEFULNESS OF YOUR ASSESSMENT DEPENDS ON THE EXTENT TO WHICH YOU DO THIS" (Tr. 333). He wrote that Ms. Brecheen's panic disorder and agoraphobia "keep her essentially housebound," and indicated that her depression caused her to be fatigued and to be "quick to tears." (Tr. 335.)

On July 26, 2007, Ms. Brecheen reported that the fluoxetine seemed to be helping her. (Supp. Tr. 669.) At subsequent clinic visits on July 30, 2007, and September 10, 2007, she shared her recent insights regarding her weight and her history. (Supp. Tr. 669-70.) On the latter date, the treatment plan devised for Plaintiff indicated she had "good insight, positive attitude." (Tr. 671.) As the ALJ observed, Dr. Rever's 2007 mRFC indicated improvement from a year earlier. (Tr. 288.) Also, Ms. Brecheen testified at the October 2007 hearing that since she began mental health treatment in April 2007, her symptoms were "a lot better." (Tr. 288, 469.)

The ALJ did not give controlling weight to Dr. Rever's assessment that Ms. Brecheen's ability to maintain attention or concentration was "poor to none" because it was not supported. (Tr. 289.) The ALJ noted that Plaintiff had told Dr. Rever that she "cannot concentrate," but his mental status examination of Ms. Brecheen did not mention concentration or memory. (Tr. 289, 336-37; Supp. Tr. 665.) The ALJ concluded that Dr. Rever's other negative ratings were equally unsupported by his psychiatric evaluation of Plaintiff. (Tr. 289.) It was the ALJ's opinion that Dr. Rever's negative ratings were "inconsistent with the minimal mental health treatment the [Plaintiff] has pursued and the lack of complaints reported to her primary care physician or her therapist." (Tr. 290.)

Ms. Brecheen was evaluated by Bruce Hutchison, Ph.D., on July 9, 2007, for the Maryland Disability Determination Services. (Tr. 348-59.) He tested her intelligence and concluded that her Verbal IQ was 87, her Performance IQ was 83, and her full scale IQ was 84, which he described as "generally slightly below to moderately below functional levels." (Tr. 351-52.) With regard to maintenance of attention or concentration, Dr. Hutchison noted the following:

> She indicates that she often does not listen and therefore has trouble remembering what she is told.

(Tr. 355-56.) He found no limitation on her ability to understand, remember, and carry out simple instructions. (Tr. 357.) The ALJ noted that Dr. Hutchison's conclusion on this point was consistent with Dr. Rever's conclusion that Ms. Brecheen "retained a fair ability to understand, remember, and carry out simple instructions as this would not preclude unskilled work." (Tr. 290.)

The ALJ's conclusion regarding the proper weight to be accorded Dr. Rever's opinions is supported by substantial record evidence. Equally so, her conclusion that Ms. Brecheen's mental impairment only caused mild restrictions on daily activities rests upon substantial evidence. The ALJ noted that Ms. Brecheen does not like going to public places (Tr. 290) but also found that she drives her children to do the laundry and the grocery shopping, she shops in Wal-Mart, and she sometimes takes her children to the library and plays on the computer while the children look at books (Tr. 287). Ms. Brecheen's indication to Dr. Hutchison that she does not get along well with other people and that co-workers and supervisors might have trouble with her slowness and changing moods and energy levels were accounted for by the ALJ in the RFC (Tr. 290), i.e., "simple, routine work with only occasional contact with co-workers or the general public, work that is essentially isolated with only occasional supervision, low stress work defined as only occasional changes in the work setting, and work dealing with objects rather than people" (Tr. 285). The ALJ's RFC of Ms. Brecheen is supported by substantial evidence.

Plaintiff's last contention is that the ALJ's hypothetical question to the VE (summarized in the preceding paragraph) lacked an evidentiary foundation. (Paper No. 17 at 6.) The VE responded to the hypothetical by listing three sedentary jobs: packer, grader/sorter, and surveillance system monitor. (Tr. 487.) The ALJ further inquired whether any of these jobs were "production type work." (*Id.*) The VE responded: "The position of packer and grader sorter could be production work, surveillance system monitor is not." (Tr. 487-88.) Then the ALJ then said:

> So let's just say that maybe there would be some problems in production type of work. To me that's paid by the piece or working on an assembly line. Would there be any other work at a sedentary level such a person could do in your opinion that would fit within that parameters [sic], adding that, if I did?

(Tr. 488.) The VE said she could not provide any other jobs. (*Id.*)

Ms. Brecheen has interpreted the above exchange between the ALJ and the VE as excluding "production" jobs from the hypothetical. (Paper No. 17 at 6.) Thus, the ALJ's inclusion of packer and grader/sorter in her written opinion as potential jobs available to Ms. Brecheen is seen by her as an error. (*Id.*) The undersigned is inclined to agree that the addition to the ALJ's hypothetical was meant to exclude "production" jobs from the VE's consideration. Thus, substantial evidence does not support the ALJ's inclusion of packer and grader/sorter as potential jobs for Plaintiff in the ALJ's final written decision.

However, even considering that error, the ALJ's decision is supported by substantial evidence because the position of surveillance system monitor fits all possible parameters of the ALJ's hypothetical. The standard is "work which exists in the national economy," according to 20 C.F.R. § 416.966(a), "in significant numbers either in the region where you live or in several other regions of the country," *id.* Further, "[w]ork exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R § 416.966(b) (emphasis added). Thus, one alternative job is sufficient to meet this standard. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981) ("The Secretary then must show two things: (1) that the claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific type of job exists in the national economy." (citing *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975))). Whether the undersigned would have made the same judgment as to Ms. Brecheen's ability to work is not determinative. The Court's function is not to substitute its own judgment for that of the ALJ, but to decide if proper legal standards were applied and to decide if substantial evidence supports the ALJ's factual findings. *Craig*, 76 F.3d at 589. Consequently, the ALJ's determination that appropriate jobs are available to Plaintiff is supported by substantial evidence, and Defendant's decision must be upheld.

Conclusion

For the foregoing reasons, the Court will enter a separate order DENYING Plaintiff's request for a hearing, AFFIRMING the agency's decision, DENYING Plaintiff's Motion for Summary Judgment, and GRANTING Defendant's Motion for Summary Judgment.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed accordingly.

Very truly yours,

James K. Bredar
United States Magistrate Judge

JKB/cw
cc:  Court file
     Chambers file